COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Powell and Senior Judge Annunziata
Argued at Alexandria, Virginia


MARIE CAMARA TOKORA-MANSARY
                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1594-09-4              JUDGE ROSEMARIE ANNUNZIATA
                                                       JULY 27, 2010
COUNTY OF STAFFORD


                FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                             Charles S. Sharp, Judge

          John A. Keats (Keats & Meleen, PLC, on brief), for appellant.

          No brief or argument for appellee.


        Marie Camara Tokora-Mansary was convicted of refusing to provide identifying

information to a law enforcement officer in violation of the Stafford County Code § 17-7.[1]  She

argues the trial court erroneously denied her request for a jury trial and further argues that the

evidence was insufficient to support the conviction.  For the reasons that follow, we agree that

the evidence was insufficient to support the conviction and reverse.  Since we reverse on the

sufficiency issue, we do not address whether Tokora-Mansary waived her right to a jury trial.

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] In the same proceeding, Tokora-Mansary was also convicted of disorderly conduct in
violation of Code § 18.2-415 and obstruction of justice in violation of Code § 18.2-460(B).  This
Court determined that Tokora-Mansary did not waive her right to a jury trial and that the
evidence was sufficient to support the disorderly conduct conviction.  See Tokora-Mansary v.
Commonwealth, No. 2494-08-4 (Va. Ct. App. Dec. 29, 2009).

438, 443, 358 S.E.2d 415, 418 (1987)). On March 27, 2007, after Tokora-Mansary was involved in an automobile accident, she called 911 for assistance. Theresa Gamlin, a paramedic, responded to the scene. Gamlin testified Tokora-Mansary approached her "demanding to know when the police were going to be there." Gamlin "tried to explain to [Tokora-Mansary] that state police would be on the scene," but Tokora-Mansary "became very belligerent" with her. As a result, Gamlin requested the sheriff's office send a deputy to the scene. Upon Deputy Jamie Walker's arrival, Gamlin saw Tokora-Mansary verbally arguing with him. Gamlin described Tokora-Mansary as belligerent. Robert Kennedy, another paramedic at the scene, confirmed Gamlin's testimony and provided similar evidence against Tokora-Mansary.

Tokora-Mansary approached Walker and asked if he would be "witnessing" the accident. When Walker responded in the negative, Tokora-Mansary turned and walked away. At that point, Walker changed his mind and decided to assess whether the accident met the criteria for filing an accident report. After inspecting the damage to the vehicles, Walker spoke to the driver of the other vehicle. When he attempted to speak to Tokora-Mansary, she refused to respond because he was not "witnessing it."

Walker testified that soon thereafter an argument ensued between Tokora-Mansary and her husband. When Walker tried to defuse the situation, Tokora-Mansary cursed him. Tokora-Mansary's actions and raised voice drew the attention of passengers in traveling vehicles and bystanders. Walker testified "the more that I conversed with [Tokora-Mansary] the more irate she became" and he "was having absolutely no effect in diffusing the situation orally." Fearing he might lose control of the situation, Walker informed Tokora-Mansary that she was under arrest for disorderly conduct and he placed his hand on her wrist. Tokora-Mansary jerked her hand away in an effort to avoid being arrested. Tokora-Mansary continued to resist and when she reached in her pocket to pull out an unidentified object, Walker pulled out his pepper

- 2 -

spray, and warned her he would use it. Tokora-Mansary swung at Walker, causing the pepper spray to hit Walker's eyes. Thereupon, Walker handcuffed Tokora-Mansary and instructed her to sit on the curb. She refused saying, "you ask me, you don't tell me." Other officers eventually placed Tokora-Mansary into Walker's car.

Once Tokora-Mansary was secure in Walker's car, Walker requested her name or social security number. Tokora-Mansary refused to provide the information and stated she wanted a lawyer. Walker requested the information several times and warned Tokora-Mansary that she could be charged for failing to identify herself. Walker handcuffed Tokora-Mansary and also placed restraints on Tokora-Mansary's feet when she refused to remove them from their position between the door and the doorjam. Tokora-Mansary continued to refuse to give Walker her identification.

Mohammed Mansary, Tokora-Mansary's husband, testified he received a voice message from his wife and that he walked to the scene. Mansary testified he conversed with his wife about the accident in Krio, an animated native African dialect, and waited forty-five minutes for the authorities to arrive. When a state trooper on the scene asked for his wife's identification, Mansary testified he "went to the car, got the ID, and I gave it to the state trooper."

"The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict, and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Beck v. Commonwealth, 2 Va. App. 170, 172, 342 S.E.2d 642, 643 (1986). "An appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the relevant question is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).

Stafford County Code § 17-7(c) provides:

> It shall be unlawful for any person at a public place or place open to the public to refuse to identify himself, by name and address, at the request of a uniformed law-enforcement officer . . . if the surrounding circumstances are such as to indicate to a reasonable man that the public safety requires such identification.

"While penal statutes must be strictly construed against the Commonwealth, '[t]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results.'" Newton v. Commonwealth, 21 Va. App. 86, 89, 462 S.E.2d 117, 119 (1995) (quoting Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992)).

We find that the circumstances at the time Walker asked Tokora-Mansary for identifying information do not support the conclusion that to a reasonable man the public safety required such identification. Although Tokora-Mansary had been belligerent and uncooperative, when Walker asked for her identification, Tokora-Mansary was seated in the police vehicle, handcuffed, and her feet were shackled. Tokora-Mansary was no longer on the side of the road near the individuals at the accident scene, passing vehicles, or bystanders, and the evidence adduced at trial was insufficient to prove Tokora-Mansary presented a danger to the public. Therefore, the trial court erred in determining that the evidence was sufficient to convict Tokora-Mansary of violating Stafford County Code § 17-7.

Because the trial court erroneously found that the evidence was sufficient to convict her for failing to provide identifying information to a law enforcement officer in violation of Stafford County Code § 17-7, we reverse the decision in this case and dismiss.

Reversed and dismissed.